UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| OMNI ASSOCIATES, LTD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 5:24-CV-00149-DCR-MAS |
| | ) |
| OMNI COMMERCIAL, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Omni Associates, Ltd is suing Defendant Omni Commercial, LLC for trademark infringement and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a), Kentucky common law, and KRS § 365.601(2). [DE 1]. Plaintiff asks the Court to compel Defendant's response to Request for Production of Documents relating to customer dissatisfaction. In response, Defendant argues the documents are not relevant to the dispute, would be disproportionate to the needs of this litigation, and overly burdensome to produce. For the reasons below, the Court agrees with Defendant that the requested documents are not relevant and, in any event, that the request is overly broad.

**I. BACKGROUND**

Plaintiff is an architectural firm that uses the names OMNI and OMNI Architects; Defendant is a design-build contracting firm offering services under the

names OMNI and OMNI Commercial. "Plaintiff asserts federal and state trademark infringement and unfair competition claims, seeking injunctive relief and damages. . . . Plaintiff's Complaint explicitly alleges that Defendant's increasingly poor reputation is putting Plaintiff at risk of losing valuable contracts, thereby damaging Plaintiff's business goodwill." [DE 30-1 at Page ID# 107]. Defendant points out that "Plaintiff does not allege any cause of action under 15 U.S.C. § 1125(c), dilution by tarnishing or blurring" and that despite this fact, Plaintiff is pursuing discovery on (unasserted) "claims that ask whether [Defendant's] use of the "omni" name has caused any harm to Plaintiff." [DE 33 at Page ID# 152].

The parties have reached an impasse on Defendant's response to Plaintiff's Request for Production of Documents (RFP) No. 14, which requests "[a]ll documents and things concerning customer satisfaction or dissatisfaction with Defendant's products or services, including without limitation all customer complaints." [DE 30-2 at Page ID# 128]. Defendant responded and subsequently provided two lengthy amended responses. Defendant produced "documents responsive to this request for the purpose of showing the strength of OMNI Commercial's Marks for a wide range of construction services." [DE 30-2 at Page ID# 129]. Essentially, Defendant produced documents positively reflecting on its services. Defendant objected to further production because "[c]ustomer satisfaction or dissatisfaction is not an element in the claims where the test is likelihood of confusion." [DE 30-2 at Page ID# 129]. Defendant added:

> Further, OMNI Commercial has searched for and located no responsive documents related to all but one of the project owners identified by

> Plaintiff during the parties' meet-and-confer process. Responsive material from that one identified project owner, Eastern Kentucky University, was not searched for because OMNI Commercial and Eastern Kentucky University were involved in an lengthy dispute over a project, which has been resolved, and OMNI Commercial's production of "customer dissatisfaction" from that project owner is burdensome, not proportional, and will not produce information likely to resolve any issue in this matter. Plaintiff is aware of this dispute and have identified initial confusion by Eastern Kentucky University related to it that was quickly cleared up by Plaintiff and Eastern Kentucky University, and, therefore, such information has not adversely impacted any Plaintiff goodwill, and Plaintiff has already disclosed that this matter has not prevented Plaintiff from obtaining projects or additional work for Eastern Kentucky University. OMNI Commercial's search of thousands of communications between the parties related to that customer dissatisfaction will require hours—if not days—of work, and will result in no materials relevant to this matter.

[DE 30-2 at Page ID# 130]. The parties scheduled a discovery dispute telephone call with the undersigned to address this issue on February 21, 2025; however, prior to the conference the parties informed the Court they had reached an agreement to limit the scope of RPD 14 to documents related to Eastern Kentucky University. Nonetheless, several weeks later, the parties alerted the Court that they had not, in fact, be able to resolve the issue. Plaintiff ultimately filed this motion to compel.

## II.   ANALYSIS

"[T]he requirements necessary to make out a claim for infringement under 15 U.S.C. § 1125(a) as follows: (1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). The parties appear

to agree that only the fourth of these requirements is at issue in this discovery dispute: whether RPD 14 will show a likelihood of confusion.

> In assessing the likelihood of confusion, a court's concern is "the performance of the marks in the commercial context." *Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1266 (6th Cir. 1985). . . . To assist in assessing actual market conditions this Court has identified a number of factors which should be examined. These include:
>
> 1. strength of the plaintiff's mark;
>
> 2. relatedness of the services;
>
> 3. similarity of the marks;
>
> 4. evidence of actual confusion;
>
> 5. marketing channels used;
>
> 6. likely degree of purchaser care and sophistication;
>
> 7. intent of the defendant in selecting the mark; and
>
> 8. likelihood of expansion of the product lines using the marks.

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991) (citing Shoney's, 759 F.2d at 1264). These factors originated more than 40 years ago in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), and continue to be the law of this circuit today when evaluating the likelihood of confusion. The *Frisch's* factors are not, however, "mathematical precision, but are simply a guide ot help determine whether confusion is likely." *Homeowners*, 931 F.2d at 1107.

Plaintiff relies on *Sunless, Inc. v. Palm Beach Tan, Inc.*, 33 F.4th 866 (6th Cir. 2022), in an attempt to pursue the Court to look outside the eight factor *Frisch* test as the exclusive means of proving likelihood of confusion. DE 30-1 at Page ID# 114].

Plaintiff claims that because the Circuit Court in *Sunless* stated it was not *reversible error* for the district court not to analyze the *Frisch's* factors—which were not argued before the district court in *Sunless*—this Court is free to abandon or augment the *Frisch's* factors with tests from other circuits. [DE 30-1 at Page ID# 114]. However, unlike *Sunless*, the parties in this matter have repeatedly made arguments related to the *Frisch's* factors, acknowledging it is the controlling case law that is directly on point to the issues in this case. When presented with a published Sixth Circuit case directly on point that has been favorably cited thousands of times, the Court need not look to the opinions of other circuits. While it may not be reversible error to do so, this Court aims to find the legally correct answer, not one that is not technically "reversible."

Thus, the Court will rely on the *Frisch's* factors to determine if RFD 14 is relevant. As the Court previously ruled, the *Frisch's* factors do not consider customer dissatisfaction. And customer dissatisfaction, alone, does not prove actual or likely confusion.

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988). Despite what Plaintiff may claim, RFP No. 14 does not address evidence of actual confusion. In fact, the parties agree there were other discovery responses Plaintiff propounded that specifically asked about any evidence of confusion between the companies. Those responses, if any, are relevant to the elements of a Lanham Act infringement claim,

specifically, the eight *Frisch's* factors assessing likelihood of confusion, but customer dissatisfaction with the alleged infringer is not.

### A. AFFIRMATIVE DEFENSES AND GOODWILL

Plaintiff claims "[e]vidence of customer complaints about Defendant's services is relevant to . . . refuting Defendant's affirmative defenses relying on its alleged 'positive reputation' and customer 'goodwill.'" [DE 30-1 at Page ID# 107]. In reality, Defendant responded, in part, to Interrogatories 11 and 12 asking it to describe the facts and circumstances supporting its affirmative defenses of latches and waiver with a statement that Defendant built "positive brand reputation" with its own services and that changing its name "would be monumentally detrimental" after years of building goodwill with its customers. These statements address Defendant's own brand and the consequences to it if Plaintiff prevails in this lawsuit, but do not at all weigh on the issue of any asserted affirmative defenses. These statements are, for all intents and purposes, were superfluous to the answer to Interrogatories 11 and 12 and do not open the door to discovery on customer dissatisfaction with Defendant's services or products. Whether Defendant has a positive brand reputation or goodwill with its customers (or not) is not relevant to proving latches, which alleges an unreasonable delay in asserting rights, unclean hands, or whether Plaintiff waived its rights. Further, whether Defendant has goodwill with its customers (or not) is not relevant to whether those customers confuse Plaintiff and Defendant's brands.

### B. DAMAGES

Likewise, whether Plaintiff has lost goodwill because of Defendant's allegedly inferior products and service is not relevant to whether there is confusion between

the two companies. Plaintiff argues this inquiry, and, therefore, Defendant's communications with unsatisfied customers, is relevant because it goes to the issue of damages from that loss of goodwill, citing *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454 (6th Cir. 2022). In *Max Rack*, the Sixth Circuit stated a plaintiff could recover for "lost goodwill that arose when consumers bought the infringer's inferior product and soured on the owner's brand as a result" *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 475 (6th Cir. 2022). That is the allegation here.

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, RPD 14 requires Defendant to disclose *every complaint (or compliment) it has ever received* from a customer. This amounts to an irrelevant fishing expedition, without any suggestion that such documents have bearing on Plaintiff's goodwill. Defendant's customers may be dissatisfied with Defendant, but the fact that these complaints were directed to Defendant in and of itself suggests that if anyone lost goodwill, it was Defendant. Written discovery regarding whether there was demonstrated confusion by customers more directly addresses the claims and damages in this case. The Court could conceive of some scenario whereby the answer to RFP 14 is relevant to the damages issue; however, the request is so overly broad that it would take several leaps and assumptions to reach that scenario. Even

in this context, RFP 14 is overly broad and the Court will not compel a response to it.[1]

C. **INJUNCTION STANDARD**

In a similar vein, Plaintiff argues that RPD 14 is relevant to the issue of obtaining a permanent injunction, because Plaintiff must demonstrate that it has suffered irreparable injury in order to obtain an injunction. As both Plaintiff and Defendant note, if Plaintiff proves infringement under the Lanham Act, it will be entitled to a rebuttable presumption of irreparable harm for the purposes of an injunction. *See* 15 U.S.C. § 1116(a). Plaintiff claims that because this is a rebuttable presumption, Defendant could rebut the presumption, landing the burden to prove irreparable harm back in Plaintiff's lap. In which case, Plaintiff argues, it will need all the communications from Defendant's unhappy customers to prove—somehow—that it has been irreparably harmed by Defendant's infringement. Not only is this an extraordinarily attenuated "what if" scenario, but it does not explain what relevant evidence will be found in such a broad discovery request to support the argument that Plaintiff suffered irreparable harm. Just as with money damages, the Court can creatively imagine responses to RFP 14 that would bear on this issue, however, simply because a request may, in some specific situation, reveal relevant information, does not mean that it is overall relevant. Furthermore, the request remains overly broad for this diminished, unlikely purpose.

---

[1] Though the parties attempted to limit the request and reached a tentative agreement to limit the request to Eastern Kentucky University, Plaintiff did not serve a revised request. The Court thus analyzes the request as written, which would encompass any customer statements of satisfaction or dissatisfaction for all of time.

### III.  CONCLUSION

In short, the Court finds that even if all of Defendant's customers hate Defendant's products and services with the heat of a thousand suns, and Defendant possesses terabytes of information evincing this white-hot hatred, those documents are not relevant to proving that Defendant infringed on Plaintiff's mark, engaged in unfair competition, or falsely designated the origin of its services, or to the issues of equitable relief or monetary damages.

For these reasons, **IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED**.  The parties may appeal this Memorandum Opinion and Order pursuant to 28 U.S.C. § 636(b)

Signed this the 8th of July, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY